1  LATHAM & WATKINS LLP
   Perry J. Viscounty (Bar No. 132143)
2    *perry.viscounty@lw.com*
   140 Scott Drive
3  Menlo Park, California 94025
   (650) 328-4600 / (650) 463-2600 Fax
4
   LATHAM & WATKINS LLP
5  Jennifer L. Barry (Bar No. 228066)
     *jennifer.barry@lw.com*
6  Patrick C. Justman (Bar No. 281324)
     *patrick.justman@lw.com*
7  12670 High Bluff Drive
   San Diego, California 92130
8  (858) 523-5400 / (858) 523-5450 Fax

9  Attorneys for Plaintiff
   ENTREPRENEUR MEDIA, INC.
10

11                     UNITED STATES DISTRICT COURT

12                    NORTHERN DISTRICT OF CALIFORNIA

13

14  ENTREPRENEUR MEDIA, INC. a          CASE NO.  3:15-cv-01415
    California corporation,
15                                      COMPLAINT FOR:
                  Plaintiff,
16                                      **(1) TRADEMARK INFRINGEMENT
          v.                               (LANHAM ACT, 15 U.S.C. § 1114)**
17
    KIRTON COMMUNICATIONS GROUP         **(2) UNFAIR COMPETITION/FALSE
18  LIMITED, a Trinidad and Tobago          DESIGNATION OF ORIGIN
    corporation; MAS FINANCIAL &            (LANHAM ACT, 15 U.S.C. § 1125(a))**
19  CORPORATE SERVICES LTD, a Trinidad
    and Tobago corporation; and DOES 1-10,  **(3) COMMON LAW TRADEMARK
20                                             INFRINGEMENT**
                  Defendants.
21                                      **(4) COMMON LAW UNFAIR COMPETITION**

22                                      **<u>DEMAND FOR JURY TRIAL</u>**

23

24

25

26

27

28

1    Plaintiff Entrepreneur Media, Inc. ("EMI"), for its Complaint against Defendants Kirton

2   Communications Group Limited ("KCG"), MAS Financial & Corporate Services Ltd ("MAS")

3   and Doe Defendants 1-10 ("Doe Defendants") (collectively, "Defendants") alleges as follows:

4                                    **THE PARTIES**

5    1.      EMI is a California corporation with its principal place of business at 18061 Fitch

6   Avenue, Irvine, California 92614.

7    2.      On information and belief, KCG is a corporation with its principal place of

8   business at LP55 Moraldo Trace, Sam Boucaud Road, Santa Cruz, Trinidad and Tobago that

9   conducts business in California and within this District, and throughout the United States under

10   the ENTREPRENEUR SPIRIT mark.

11    3.      On information and belief, MAS is a corporation with its principal place of

12   business at 63 Aberdeen Park Edinburgh Gardens, Chaguanas, Trinidad and Tobago that

13   conducts business in California and within this District, and throughout the United States under

14   the ENTREPRENEUR SPIRIT mark.

15    4.      EMI is ignorant of the true names of Doe Defendants, inclusive, and therefore

16   sues those defendants by such fictitious names.  On information and belief, Doe Defendants are

17   responsible for the acts alleged in this Complaint.  When the true names of the Doe Defendants

18   are ascertained, EMI will seek leave of this Court to amend this Complaint to name those

19   individuals or entities.

20    5.      On information and belief, Defendants were the agents and employees of each

21   other and, at all times mentioned, acted within the course and scope of such agency and

22   employment.

23              **JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

24    6.      This is a civil action alleging trademark infringement, false designation of origin,

25   and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114(a), 1125(a); and California

26   common law trademark infringement and unfair competition.

27    7.      Pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a), this Court has subject

28   matter jurisdiction over EMI's claims for relief for violation of the Lanham Act.  Pursuant to 28

U.S.C. § 1338(b), this Court has supplemental jurisdiction over EMI's state law unfair competition claims because those claims are joined with substantial and related claims under the Lanham Act. Pursuant to 28 U.S.C. § 1367(a), this Court also has supplemental jurisdiction over EMI's state law claims because all of EMI's claims arise out of a common nucleus of operative facts.

8.     On information and belief, this Court has personal jurisdiction over Defendants, and each of them, because (i) Defendants have (a) conducted substantial business in the State of California; (b) derived financial benefits from residents of the State of California, including by marketing and selling infringing products to residents of the State of California and otherwise placing infringing products into the stream of commerce, with the knowledge or understanding that such products are sold in the State of California, including within this District; (c) purposefully availed themselves of the privilege of conducting business within the State of California; and (d) sought protection and benefits from the laws of the State of California; and (ii) the causes of action arise directly from the Defendants' business contacts and other activities in the State of California.

9.     Venue in this Court exists under (i) 28 U.S.C. §§ 1391(b)(1), (c)(2) as Defendants reside in this District inasmuch they are subject to the Court's personal jurisdiction; (ii) 28 U.S.C. § 1391(b)(2) inasmuch a substantial part of the events giving rise to EMI's claims occurred within this District; and/or (iii) 28 U.S.C §§ 1391(b)(3), (c)(3) inasmuch as Defendants are deemed not to be residents of the United States.

10.     This is an Intellectual Property Action and may be assigned on a district-wide basis pursuant to Civil L.R. 3-2(c). Alternatively, this case may be assigned to the San Francisco Division as a substantial part of the events which give rise to the alleged claims arose in San Francisco County.

### FACTS COMMON TO ALL CLAIMS FOR RELIEF
### EMI and Its Successful ENTREPRENEUR® Brand

11.     For over thirty years, EMI (together with its predecessor companies) has published magazines and books, which provide editorial content and other information, as well

1    as offer products and services related, or of interest, to businesses, business owners, and

2    prospective business owners.

3        12.    EMI's longstanding marketing and sales efforts have been conducted primarily

4    under the mark ENTREPRENEUR® (the "ENTREPRENEUR® Mark").

5        13.    EMI is the publisher of ENTREPRENEUR® magazine and other publications

6    incorporating the ENTREPRENEUR® name in their titles.  ENTREPRENEUR® magazine is

7    published monthly with a current print and digital paid circulation, including both subscriptions

8    and single-copy sales, of more than 650,000 in the United States and worldwide.

9    ENTREPRENEUR® magazine is sold and distributed in over 100 foreign countries.

10       14.    ENTREPRENEUR® magazine routinely features articles and interviews of some

11   of the biggest names in the business community, including Richard Branson, skateboarding icon

12   Tony Hawk, quarterback Drew Brees, and hip hop mogul Russell Simmons:

13
   
14
15
16
17
18
19       15.    ENTREPRENEUR® magazine also annually publishes, and has continuously

20   published for over thirty years, the highly anticipated Franchise 500® ranking of America's top

21   franchises using EMI's top-secret formula:

22
  
23
24
25
26
27
28

16.    EMI also publishes and distributes within the United States and worldwide over 200 book titles under the ENTREPRENEUR® Mark and ENTREPRENEUR PRESS® imprint:

 

17.    EMI has also launched many of its most successful titles as e-books:

  

18.    EMI also conducts seminars, workshops, and other educational services geared towards teaching others to successfully start and operate businesses.  These events have included (i) the Sales Success Secrets/Business Success Secrets® Breakfasts sponsored by State Farm Insurance; (ii) the Women in Charge Conferences sponsored by OPEN—American Express; (iii) the Business Success Secrets® Breakfast Seminars sponsored by Deluxe Corporation and Sprint; (iv) the Winning Strategies for Business Conference sponsored by Verizon; and (v) Entrepreneur® Magazine's Growth 2.0 Conferences presented by The UPS Store®:









19.     EMI operates a number of websites to further disseminate and market its content and services, including *entrepreneur.com*, *YoungEntrepreneur.com*, and *EntrepreneurPress.com*:



20.     The website at *entrepreneur.com* has averaged 20 million unique visitors and 85 million page views per month over the last six months, and it is ranked, respectively, as the 542 and 668 most visited website in the United States and world by Alexa.

21.     EMI has also launched applications for the iPhone, iPad, Android, and Blackberry:



22.     EMI's fame and high-quality content and services have resulted in numerous co-branding business relationships with some of the top names in news and business.  These co-branding relationships have included: (i) The UPS Store® (an annual contest and awards ceremony for selecting and promoting top established entrepreneurs, emerging entrepreneurs, and college entrepreneurs); (ii) MSNBC; (iii) Reuters; (iv) PerfectBusiness.com; (v) Princeton Review (ranking top entrepreneurial schools); (vi) Great Place to Work® (annual Best Small & Medium Workplaces rankings); and (vii) Palo Alto Software (Entrepreneur Magazine's Business Plan Pro® software):









23.     Through careful cultivation of its various products and services, EMI has developed an outstanding reputation as an innovator in the field of business start-up and strategy and has established an extremely loyal customer following.

24.     EMI has received a tremendous amount of public recognition and acclaim for the products sold and services provided under its ENTREPRENEUR® brand.  Through EMI's widespread and continuous use of the ENTREPRENEUR® Mark, the Mark has acquired extensive goodwill, has developed a high degree of distinctiveness, and has become famous, well

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

OC\1829858

COMPLAINT

1  known, and recognized as identifying goods and services that originate from EMI.

2      25.     The fame and quality of the products and services bearing the

3  ENTREPRENEUR® Mark have been widely recognized through industry awards and

4  commendations.   For example, ENTREPRENEUR® magazine was a finalist in two categories

5  in Folio's 2010 Eddie & Ozzie magazine awards, has been named one of the top performing

6  magazines for four years in "Capell's Circulation Report," and has been honored for its content

7  by receipt of the prestigious Maggie award in 2008, 2009, 2010, and 2011 from the Western

8  Publishing Association.  EMI's website at *Entrepreneur.com* has been awarded "Outstanding

9  Achievement in Web Development" by the Web Marketing Association, and its networking

10 website under the ENTREPRENEUR CONNECT® Mark was voted the #1 "Top 10 Social

11 Networks for Entrepreneurs" by Mashable.com.  EMI has also received multiple Integrated

12 Marketing Awards from Min Online for its magazine and website.  In addition, both

13 ENTREPRENEUR® magazine and the *Entrepreneur.com* website have been named to BtoB

14 magazine's 2010, 2011, and 2012 lists of the top 50 media outlets for business-to-business

15 advertising.

16                       **EMI's Intellectual Property Rights**

17      26.     EMI owns, and has obtained United States federal registrations for, the

18 ENTREPRENEUR® Mark, as well as a family of related marks incorporating the term

19 ENTREPRENEUR, as follows:

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| ENTREPRENEUR | 16:  Paper goods and printed matter; namely, magazines, books and published reports pertaining to business opportunities | 1453968 August 25, 1987 |
| ENTREPRENEUR | 35:  Advertising and business services, namely, arranging for the promotion of the goods and services of others by means of a global computer network and other computer online services providers; providing business information for the use of customers in the field of starting and operating small businesses and permitting customers to obtain information via a global computer network and other computer online service providers and; web advertising services, namely, providing active links to the websites of others | 2263883 July 27, 1999 |

| ENTREPRENEUR | 35:  Arranging and conducting trade show exhibitions in the field of entrepreneurial activities, namely the start-up and operation of small business enterprises 41:  Educational services, namely, conducting seminars on the development and operation of businesses, and conducting work shops on computer technology, telecommunications, marketing, financing options, real estate management, tax planning and insurance | 2502032 October 30, 2001 |
|---|---|---|
| ENTREPRENEUR | 9: Downloadable computer software and software for mobile devices for the reproduction, display and distribution of digitized content | 4345424 June 4, 2013 |
| ENTREPRENEUR | 38: Streaming of video and digital material on the Internet | 4260948 December 18, 2012 |
| ENTREPRENEUR BOOKSTORE | 35: Online ordering services featuring printed and electronically downloadable publications, namely, books, study guides, legal and business forms, and newsletters, concerning advice and information relating to starting and operating a business and other topics concerning and of interest to entrepreneurs, new and existing businesses, and members of the general public | 4612937 September 30, 2014 |
| ENTREPRENEUR PRESS | 16:  Paper goods and printed matter, namely, books, manuals, prepared reports, work books, study guides, legal and business forms, and newsletters concerning advice and information relating to the subjects of starting, running and operating a business, and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses and members of the general public 35:  On-line ordering services featuring printed and electronically downloadable publications, namely, books, study guides, legal and business forms, and newsletters, concerning advice and information relating to the subjects of starting, running and operating a business and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses and members of the general public | 3470064 July 22, 2008 |

| | | |
|---|---|---|
| **E**p Entrepreneur Press | 16:  Paper goods and printed matter, namely, books, manuals, prepared reports, work books, study guides, legal and business forms, and newsletters concerning advice and information relating to the subjects of starting, running and operating a business, and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses and members of the general public<br>35:  On-line ordering services featuring printed and electronically downloadable publications, namely, books, study guides, legal and business forms, and newsletters, concerning advice and information relating to the subjects of starting, running and operating a business and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses and members of the general public | 3470063<br>July 22, 2008 |
| ENTREPRENEUR'S STARTUPS | 9:  Downloadable computer software and software for mobile devices for the reproduction, display, distribution, and sharing of digitized content; downloadable electronic publications, namely, magazines in the fields of business, finance, sales, marketing, current events, lifestyle issues, and developments in science and technology | 4532577<br>May 20, 2014 |
| ENTREPRENEUR'S STARTUPS | 16:  Paper goods and printed matter; namely, magazines, books, booklets and published reports pertaining to business opportunities | 3204899<br>February 6, 2007 |

27.     The above marks are collectively referred to as the "EMI Marks."  The above registrations are collectively referred to as the "EMI Registrations."

28.     EMI's registration numbers 1,453,968, 2,263,883 and 2,502,032 for ENTREPRENEUR® and 3,204,899 for ENTREPRENEUR'S STARTUPS® are incontestable pursuant to 15 U.S.C. § 1065, which constitutes conclusive evidence of the registrations' validity, as well as EMI's entitlement to the exclusive use of the marks in commerce throughout the United States on the goods and services listed in the registrations.

29.     Further, the EMI Registrations constitute prima facie evidence that the marks are valid, and that EMI is entitled to the exclusive use of the marks in commerce throughout the United States on the goods and services listed in the registrations.

30.     EMI also has extensive common law rights in the ENTREPRENEUR® Mark based on its use of that Mark over the last three decades.

31.     Through extensive use, marketing, branding, and promotion, the

1   ENTREPRENEUR® Mark is well-known and famous and enjoys substantial recognition,

2   goodwill, and association with EMI.  The public distinguishes EMI's goods and services from

3   those of other publishers and providers of educational services on the basis of the

4   ENTREPRENEUR® Mark.  The ENTREPRENEUR® Mark is distinctive and has acquired

5   secondary meaning in the United States.

6        32.    Indeed, the U.S. District Court for the Central District of California held that:

7   (i) "The extensive advertising and public recognition over the past 25 years have established [the

8   ENTREPRENEUR® Mark] as a strong mark in the industry."; (ii) The ENTREPRENEUR®

9   Mark "is a strong distinctive mark, deserving of significant protection."; and (iii) The

10  ENTREPRENEUR® Mark "has acquired secondary meaning."  *Entrepreneur Media, Inc. v.*

11  *Smith*, No. CV 98-3607 FMC (CTx), 2004 U.S. Dist. LEXIS 24078, at *9-10, 13 (C.D. Cal. June

12  23, 2004).

13       33.    The Ninth Circuit reviewed the District Court's findings and affirmed them on

14  appeal.  *Entrepreneur Media, Inc. v. Smith*, 101 Fed. Appx. 212, 2004 U.S. App. LEXIS 11567

15  (9th Cir. 2004).

16       34.    Moreover, both a Magistrate Judge and District Court Judge in the Eastern

17  District of Virginia found the ENTREPRENEUR Mark to be distinctive.  *Entrepreneur Media,*

18  *Inc. v. seattleentrepreneur.com*, No. 11-00409, Docket No. 22 (E.D. Va. Dec. 6, 2011).

19       35.    Further, the U.S. District Court for the District of Maryland recognized the EMI

20  Marks as valid, strong, and distinctive.  *Entrepreneur Media, Inc. v. JMD Entertainment Group,*

21  *LLC, et al*, No. RDB-12-1970, Docket No. 30 (D. Md. July 23, 2013).

22              **Defendants' Unauthorized Use of the EMI Marks**

23       36.    Under the ENTREPRENEUR SPIRIT mark, Defendants offer (i) a digital

24  magazine providing in-depth interviews and business inspiration, tips and advice; (ii) online

25  articles on the topics of entrepreneurship, startups, growing a business, finance, and business

26  advice; and (iii) advertising and promotional avenues for small businesses.  As shown below,

27  Defendants place undue emphasis on the ENTREPRENEUR portion of their mark:

28

 

37.     Defendants offer, market, and promote these goods and services through a variety of channels, including their (i) *entrepreneurspirit.org* domain name and website, which is registered through the U.S.-based registrar GoDaddy.com, LLC; (ii) a mobile application, which is hosted and distributed via the iTunes store owned by the California-based Apple, Inc.; (iii) Facebook page (*facebook.com/ESCMag*), which is provided by the California-based Facebook, Inc.; and (iv) Twitter page (*twitter.com/ESC_Magazine*), which is provided by the California-based Twitter, Inc.

38.     As both EMI and Defendants offer their goods through the iTunes store and target the same type of consumer, the potential for consumer confusion is heightened as both applications may appear directly next to each other on a user's phone.  Indeed, as shown by the following picture that Defendants posted to their Facebook page, this greatly increases the potential for confusion:

///

///

///

///

///

///

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

OC\1829858                                                                                        COMPLAINT



39.     Given EMI's renown, online presence, and its long history of providing articles, profiles, newsletters, and information for small- and mid-sized businesses, EMI is very concerned that consumers will be confused into believing that Defendants and their goods and services are endorsed, approved, or sponsored by, or affiliated, connected, or associated with EMI.

40.     Defendants will thus enjoy the benefits of EMI's reputation and goodwill based on this consumer confusion, to EMI's detriment.

41.     EMI contacted Defendants several times to express its concerns regarding this potential for confusion, but Defendants have refused to cease use of the ENTREPRENEUR SPIRIT mark.

**EMI Is Suffering Harm**

**from Defendants' Continuing Infringement and Unlawful Conduct**

42.     Defendants' continued use of the confusingly similar ENTREPRENEUR SPIRIT mark in commerce violates EMI's valuable intellectual property rights in the EMI Marks and EMI Registrations, and Defendants' knowing, intentional, and willful use of this mark is damaging EMI.

43.     Due to Defendants' continuing willful infringement and unlawful conduct, EMI is now forced to bring this Complaint to protect its valuable and longstanding intellectual property rights.  EMI had to retain counsel and incur substantial fees and costs (and it continues to incur those fees and costs) to prosecute this suit and pursue its claims.

44.     EMI's interest in protecting its intellectual property rights and its products and services from consumer confusion outweigh any harm to Defendants.  The public interest is best served by granting EMI's requested relief against Defendants.

**FIRST CLAIM FOR RELIEF**

**Lanham Act - Federal Trademark Infringement - 15 U.S.C. § 1114**

45.     EMI incorporates by reference the factual allegations set forth above.

46.     EMI owns the EMI Marks and the EMI Registrations. The trademarks reflected in the EMI Registrations are strong and distinctive and designate EMI as the source of all products and services advertised, marketed, sold, or used in connection with the EMI Marks.  In particular, the ENTREPRENEUR® Mark has been used for over thirty years and has been recognized by federal courts as a strong and distinctive mark.

47.     EMI is the senior user of the EMI Marks, as it began use of those marks in interstate commerce prior to Defendants' first use of the confusingly similar ENTREPRENEUR SPIRIT mark.

48.     Defendants do not have authorization, license or permission from EMI to market and sell their products and services under the ENTREPRENEUR SPIRIT mark, which is confusingly similar to the EMI Marks, including the ENTREPRENEUR® Mark, and which products and services are closely related to the particular products and services with which the

1   EMI Marks, and in particular the ENTREPRENEUR® Mark, have come to be associated.

2      49.   Defendants were aware of the EMI Marks, and in particular the

3   ENTREPRENEUR® Mark, as Defendants were on constructive notice based on EMI's

4   longstanding federal registrations, as well as on actual notice based on EMI's numerous

5   communications to Defendants about this issue.  Thus, Defendants' unauthorized use of the

6   confusingly similar ENTREPRENEUR SPIRIT mark was knowing, intentional, and willful.

7      50.   As a direct and proximate result of Defendants' wrongful conduct, EMI has been

8   and will continue to be damaged.

9      51.   Defendants' actions thus constitute trademark infringement.

10      52.   Unless an injunction is issued enjoining any continuing or future use of the

11   confusingly similar ENTREPRENEUR SPIRIT mark by Defendants, such continuing or future

12   use is likely to continue to cause confusion, mistake, or deception as to source, origin, affiliation,

13   or sponsorship, and will thereby irreparably damage EMI.

14      53.   Defendants' activities have caused and will continue to cause irreparable harm to

15   EMI, for which it has no adequate remedy at law, in that: (i) the EMI Marks, and in particular the

16   ENTREPRENEUR® Mark, comprise unique and valuable property rights that have no readily

17   determinable market value; (ii) Defendants' infringement constitutes interference with EMI's

18   goodwill and customer relationships and will substantially harm EMI's reputation as a source of

19   high-quality goods and services; and (iii) Defendants' wrongful conduct, and the damages

20   resulting to EMI, are continuing.  Accordingly, EMI is entitled to injunctive relief pursuant to

21   15 U.S.C. § 1116(a).

22      54.   Pursuant to 15 U.S.C. §1117(a), EMI is entitled to an order: (i) requiring

23   Defendants to account to EMI for any and all profits derived by Defendants from their actions, to

24   be increased in accordance with the applicable provisions of law; and (ii) awarding all damages

25   sustained by EMI caused by Defendants' conduct.

26      55.   Defendants' conduct was intentional and without foundation in law, and pursuant

27   to 15 U.S.C. § 1117(a), EMI is therefore entitled to an award of treble damages against

28   Defendants.

1    56.    Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a), so

2    EMI is entitled to an award of attorneys' fees and costs.

3    **SECOND CLAIM FOR RELIEF**

4    **Lanham Act - Unfair Competition and False Designation of Origin - 15 U.S.C. § 1125(a)**

5    57.    EMI incorporates by reference the factual allegations set forth above.

6    58.    The EMI Marks, and in particular the ENTREPRENEUR® Mark, are strong and

7    distinctive and designate EMI as the source of all goods and services advertised, marketed, sold,

8    or used in connection with those marks.  In addition, by virtue of EMI's decades-long use of the

9    ENTREPRENEUR® Mark in connection with its products and services, and its extensive

10   marketing, advertising, promotion, and sale of its products and services under that mark, the EMI

11   Marks, and in particular the ENTREPRENEUR® Mark, have acquired secondary meaning,

12   whereby the consuming public of this District, the State of California, and throughout the United

13   States, associate the EMI Marks with a single source of products and services.

14   59.    EMI is the senior user of the EMI Marks, as it began use of those marks in

15   interstate commerce prior to Defendants' first use of the confusingly similar ENTREPRENEUR

16   SPIRIT mark.

17   60.    Defendants were aware of the EMI Marks, and in particular the

18   ENTREPRENEUR® Mark, as Defendants were on constructive notice based on EMI's

19   longstanding federal registrations, as well as on actual notice based on EMI's numerous

20   communications to Defendants about this issue.  Thus, Defendants' unauthorized use of the

21   confusingly similar ENTREPRENEUR SPIRIT mark was knowing, intentional, and willful.

22   61.    On information and belief, through their use of the confusingly similar

23   ENTREPRENEUR SPIRIT mark, Defendants intended to, and did in fact, confuse and mislead

24   consumers into believing, and misrepresented and created the false impression, that EMI

25   somehow authorized, originated, sponsored, approved, licensed, or participated in Defendants'

26   use of the confusingly similar ENTREPRENEUR SPIRIT mark.

27   62.    In fact, there is no connection, association, or licensing relationship between EMI

28   and Defendants, nor has EMI ever authorized, licensed, or given permission to Defendants to use

the confusingly similar ENTREPRENEUR SPIRIT mark in any manner.

63.    On information and belief, Defendants' use of the confusingly similar ENTREPRENEUR SPIRIT mark will likely cause confusion as to the origin and authenticity of Defendants' websites and related products and services and will likely cause others to believe that there is a relationship between Defendants and EMI.

64.    As a direct and proximate result of Defendants' wrongful conduct, EMI has been and will continue to be damaged.

65.    Defendants' actions thus constitute false designation of origin and unfair competition.

66.    Defendants' activities have caused, and will continue to cause, irreparable harm to EMI, for which it has no adequate remedy at law, in that: (i) the EMI Marks, including the ENTREPRENEUR® Mark, comprise unique and valuable property rights that have no readily determinable market value; (ii) Defendants' infringement constitutes interference with EMI's goodwill and customer relationships and will substantially harm EMI's reputation as a source of high-quality goods and services; and (iii) Defendants' wrongful conduct, and the damages resulting to EMI, are continuing.  Accordingly, EMI is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

67.    Pursuant to 15 U.S.C. §1117(a), EMI is entitled to an order: (i) requiring Defendants to account to EMI for any and all profits derived by Defendants from their actions, to be increased in accordance with the applicable provisions of law; and (ii) awarding all damages sustained by EMI caused by Defendants' conduct.

68.    Defendants' conduct was intentional and without foundation in law, and pursuant to 15 U.S.C. § 1117(a), EMI is therefore entitled to an award of treble damages against Defendants.

69.    Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a), so EMI is entitled to an award of attorneys' fees and costs.

**THIRD CLAIM FOR RELIEF**

**Common Law Trademark Infringement**

70.     EMI incorporates by reference the factual allegations set forth above.

71.     EMI has valid and protectable common law rights in the EMI Marks.

72.     EMI is the senior user of the EMI Marks.

73.     Defendants' conduct constitutes infringement of EMI's common law rights in the EMI Marks.

74.     Defendants' use of the confusingly similar ENTREPRENEUR SPIRIT mark on unauthorized goods and services is likely to cause confusion as to the origin of Defendants' goods and services and is likely to cause others to believe that there is a relationship between Defendants and EMI.

75.     Defendants' wrongful acts have permitted and will permit them to receive substantial profits based upon the strength of the reputation of EMI and the substantial goodwill it has built up in the EMI Marks.

76.     As a direct and proximate result of Defendants' wrongful conduct, EMI has been and will continue to be damaged.

77.     Unless an injunction is issued enjoining any continuing or future use of the EMI Marks, such continuing or future use is likely to continue to cause confusion and thereby to damage EMI irreparably.  EMI has no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**

**Common Law Unfair Competition**

78.     EMI incorporates by reference the factual allegations set forth above.

79.     EMI has expended significant time and expense in developing the EMI Marks and the high-quality products and services it markets and sells under those marks.  The EMI Marks have been very successful and have developed a substantial reputation and goodwill in the marketplace.

80.     Through their actions, Defendants have misappropriated EMI's efforts and are exploiting the EMI Marks and EMI's reputation to market and sell their goods and services

under the confusingly similar ENTREPRENEUR SPIRIT mark. These actions constitute unfair competition.

81. As a direct and proximate result of Defendants' wrongful conduct, EMI has been and will continue to be damaged.

82. Unless an injunction is issued enjoining Defendants' unfairly competitive conduct, EMI will continue to be damaged irreparably. EMI has no adequate remedy at law.

83. On information and belief, Defendants have acted willfully, intentionally and maliciously, such that EMI is entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, EMI respectfully prays for the following relief:

(a) An injunction ordering Defendants, and their principals, officers, directors, members, partners, agents, servants, employees, and attorneys, and all other persons acting in concert or participating with them, who receive actual notice of the injunction order by personal or other service, to:

(i) cease all use and never use the ENTREPRENEUR SPIRIT mark, the EMI Marks, or any other mark likely to cause confusion with the EMI Marks, in connection with the promotion, advertising, offering for sale, or sale, of any products or services;

(ii) never use any false designation of origin, false representation, or any false or misleading description of fact, that can, or is likely to, lead the consuming public or individual members thereof, to believe that any products or services produced, offered, promoted, marketed, advertised, provided, or sold by Defendants are in any manner associated or connected with EMI, or are licensed, approved, or authorized in any way by EMI;

(iii) never represent, suggest in any fashion to any third party, or perform any act that may give rise to the belief, that Defendants, or any of their goods or services, are related to, authorized, or sponsored by EMI;

(iv) cease all use of the domain name *entrepreneurspirit.org* and any similar domain names, and never register any domain names that contain any of the EMI Marks, or domain names that contain, or are likely to be confused with, any of the EMI Marks;

1               (v)      cease all advertising of products or services under the ENTREPRENEUR

2 SPIRIT mark, including but not limited to Defendants' magazine, Facebook page, Twitter

3 account, and iTunes application;

4               (vi)     never unfairly compete with EMI in any manner whatsoever, or engage in

5 any unfair, fraudulent, or deceptive business practices that relate in any way to the production,

6 distribution, marketing, and/or sale of products and services bearing any of the EMI Marks, or

7 any other mark that contains, or is likely to cause confusion with, any of the EMI Marks; and

8              (vii)     never apply for, or seek to register, the ENTREPRENEUR SPIRIT mark

9 or any mark that contains, or is likely to cause confusion with, any of the EMI Marks.

10     (b)     An order pursuant to 15 U.S.C. § 1116(a), directing Defendants to file with the

11 Court and serve upon EMI's counsel, within thirty (30) days after service of the order of

12 injunction, a report in writing under oath setting forth in detail the manner and form in which

13 Defendants have complied with the injunction.

14     (c)     An order transferring to EMI all domain names, including but not limited to

15 *entrepreneurspirit.org*, in Defendants' possession, custody, or control that include the word

16 "entrepreneur" or any misspelling thereof, or are otherwise confusingly similar to, or contain any

17 of, the EMI Marks.

18     (d)     An order finding that, by the acts complained of above, Defendants have infringed

19 EMI's federally registered trademarks in violation of 15 U.S.C. § 1114.

20     (e)     An order finding that, by the acts complained of above, Defendants have created a

21 false designation of origin and false representation of association in violation of 15 U.S.C.

22 § 1125(a).

23     (f)     An order finding that, by the acts complained of above, Defendants have infringed

24 EMI's trademarks in violation of California common law.

25     (g)     An order finding that, by the acts complained of above, Defendants have engaged

26 in unfair competition in violation of California common law.

27     (h)     An order pursuant to 15 U.S.C. § 1117(a) compelling Defendants to account to

28 EMI for any and all profits derived by them from their unlawful and infringing conduct.

1      (i)      An order awarding EMI damages as follows:

2              (i)      actual damages, as well as all of Defendants' profits or gains of any kind

3                       from their acts of trademark infringement, false designation of origin, and

4                       unfair competition, including a trebling of those damages, pursuant to 15

5                       U.S.C. § 1117(a); and

6              (ii)     Punitive damages pursuant to California common law.

7      (j)      An order pursuant to 15 U.S.C. § 1117(a) finding that this is an exceptional case

8  and awarding EMI its reasonable attorneys' fees.

9      (k)      An order awarding EMI all of its costs, disbursements and other expenses

10 incurred due to Defendants' unlawful conduct, pursuant to 15 U.S.C. § 1117(a).

11     (l)      An order awarding EMI pre-judgment interest.

12     (m)      An order awarding EMI such other relief as the Court deems appropriate.

13                           **<u>DEMAND FOR JURY TRIAL</u>**

14        Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Local Rule 38-1, EMI

15 hereby demands a trial by jury.

16 Dated:  March 27, 2015                    LATHAM & WATKINS LLP

17

18                                       By /s/ Jennifer L. Barry

19                                          Perry J. Viscounty
                                          Jennifer L. Barry

20                                          Attorneys for Plaintiff
                                          ENTREPRENEUR MEDIA, INC.

21

22

23

24

25

26

27

28