LATHAM & WATKINS LLP
Perry J. Viscounty (Bar No. 132143)
   *perry.viscounty@lw.com*
140 Scott Drive
Menlo Park, California 94025
(650) 328-4600 / (650) 463-2600 Fax

LATHAM & WATKINS LLP
Jennifer L. Barry (Bar No. 228066)
   *jennifer.barry@lw.com*
Patrick C. Justman (Bar No. 281324)
   *patrick.justman@lw.com*
12670 High Bluff Drive
San Diego, California 92130
(858) 523-5400 / (858) 523-5450 Fax

Attorneys for Plaintiff
ENTREPRENEUR MEDIA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ENTREPRENEUR MEDIA, INC. a California corporation,<br><br>   Plaintiff,<br><br>  v.<br><br>KIRTON COMMUNICATIONS GROUP LIMITED, a Trinidad and Tobago corporation; MAS FINANCIAL & CORPORATE SERVICES LTD, a Trinidad and Tobago corporation; and DOES 1-10,<br><br>   Defendants. | CASE NO. 3:15-cv-01415-SI<br><br>**APPLICATION FOR DEFAULT JUDGMENT AGAINST KIRTON COMMUNICATIONS GROUP LIMITED AND MAS FINANCIAL & CORPORATE SERVICES LTD**<br><br>Assigned to Hon. Susan Illston<br><br>Date:   September 18, 2015<br>Time:   9:00 a.m.<br>Location:  Courtroom 10, 19th Floor |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

OC\1996381.3

Case No. 3:15-cv-01415-SI
APPLICATION FOR DEFAULT JUDGMENT

## <u>NOTICE OF APPLICATION AND APPLICATION</u>

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on September 18, 2015 at 9:00 a.m., or as soon thereafter as this matter may be heard before the Honorable Susan Illston, United States District Judge of the Northern District of California at 450 Golden Gate Avenue, Courtroom 10, 19th Floor, San Francisco, California 94102, Plaintiff Entrepreneur Media, Inc. ("EMI") will and hereby does apply, pursuant to Federal Rule of Civil Procedure 55, for a default judgment against Defendants Kirton Communications Group Limited and MAS Financial & Corporate Services Ltd. (collectively, "Defendants").  This Application seeks entry of a permanent injunction and an award of appropriate costs and attorneys' fees.

This Application is based on this Notice of Application and Application, EMI's supporting Memorandum of Points and Authorities, the Declaration of Patrick C. Justman in Support of Plaintiff's Application for Default Judgment ("Justman Dec."), all pleadings and papers on file with the Court in this action, and on such other matters as may be presented to the Court at or before the hearing of this Application.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
ORANGE COUNTY

OC\1996381.3

1

Case No. 3:15-cv-01415-SI
APPLICATION FOR DEFAULT JUDGMENT

1

TABLE OF CONTENTS

2
Page(s)

3   I.      INTRODUCTION ...................................................................................... 1

4   II.     STATEMENT OF FACTS .......................................................................... 1

5   III.    ARGUMENT ............................................................................................. 2

6           A.      EMI is Entitled to Default Judgment ............................................... 2

7                   1.      EMI Will Suffer Prejudice Absent Default Judgment ............. 3

8                   2.      EMI's Claims are Meritorious and Well-Founded ................... 3

9                           a.      EMI owns Protectable, Distinctive, and Famous
                                    Marks ............................................................................. 4
10

11                          b.      Defendants' unauthorized use of the
                                    ENTREPRENEUR SPIRIT mark creates a
12                                  likelihood of consumer confusion.................................. 5

13                  3.      The Damage to the EMI Marks and EMI's Goodwill is
                            Irreparable ............................................................................. 8

14                  4.      No Potential Dispute of Material Facts and No Excusable
                            Neglect .................................................................................. 8
15
                    5.      Likelihood of a Decision on the Merits ................................... 9
16
            B.      This Court has Jurisdiction to Enter Default Judgment against
17                  Defendants ...................................................................................... 9

18          C.      EMI is Entitled to Injunctive Relief............................................... 12

19          D.      EMI is Entitled to its Costs and Reasonable Attorneys' Fees ........... 14

20  IV.     CONCLUSION........................................................................................ 15

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

OC\1996381.3

i

Case No. 3:15-cv-01415-SI
APPLICATION FOR DEFAULT JUDGMENT

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Allergan Inc. v. Mira Life Group, Inc.*,
    72 U.S.P.Q.2d 1756 (C.D. Cal. 2004) .................................................................. 12

*AMF, Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979) ............................................................................ 6, 8

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ............................................................................................ 11

*Cleary v. News Corp.*,
    30 F.3d 1255 (9th Cir. 1994) ............................................................................... 3

*CollegeSource, Inc. v. AcademyOne, Inc.*,
    653 F.3d 1066 (9th Cir. 2011) ............................................................................ 11

*craigslist, Inc. v. Naturemarket, Inc.*,
    694 F. Supp. 2d 1039 (N.D. Cal. 2010) ............................................................. 11

*craigslist, Inc. v. RealWorks*,
    No. 08-5072, 2009 U.S. Dist. Lexis 132432 (N.D. Cal. Oct. 29, 2009) .............. 12

*Cyclone USA, Inc. v. LL&C Dealer Servs., LLC*,
    No. 07-5040, 2010 U.S. Dist. Lexis 51193 (C.D. Cal. May 24, 2010) .......... 14, 15

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
    528 F.3d 696 (9th Cir. 2008) ............................................................................. 14

*Discovery Commc'ns, Inc. v. Animal Planet, Inc.*,
    172 F. Supp. 2d 1282 (C.D. Cal. 2001) ............................................................... 8

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
    967 F.2d 1280 (9th Cir. 1992) ............................................................................. 6

*eBay Inc. v. MercExchange, LLC*,
    547 U.S. 388 (2006) ........................................................................................... 12

*Eitel v. McCool*,
    782 F.2d 1470 (9th Cir. 1986) .......................................................................... 2, 3

*Elektra Entm't Grp. Inc. v. Crawford*,
    226 F.R.D. 388 (C.D. Cal. 2005) ..................................................................... 9, 12

*Entrepreneur Media, Inc. v. JMD Entertainment Group, LLC, et al*,
    958 F. Supp. 2d 588 (D. Md. 2013) ..................................................................... 5

*Entrepreneur Media, Inc. v. seattleentrepreneur.com*,
    No. 11-00409, 2011 U.S. Dist. Lexis 139817 (E.D. Va. Dec. 6, 2011) ................. 5

*Entrepreneur Media, Inc. v. Smith*,
    101 Fed. Appx. 212 (9th Cir. 2004) ..................................................................... 5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

OC\1996381.3

ii

Case No. 3:15-cv-01415-SI
APPLICATION FOR DEFAULT JUDGMENT

*Entrepreneur Media, Inc. v. Smith*,
  No. 98-3607, 2004 U.S. Dist. Lexis 24078 (C.D. Cal. June 23, 2004) .................................. 5

*Exobox Techs. Corp. v. Tsambis*,
  No. 14-00501, 2015 U.S. Dist. Lexis 2157 (D. Nev. Jan. 6, 2015) ...................................... 11

*Facebook, Inc. v. Banana Ads LLC*,
  No. 11-03619, 2013 U.S. Dist. Lexis 65834 (N.D. Cal. Apr. 30, 2013) ...................... 10, 11

*Geddes v. United Financial Group*,
  559 F.2d 557 (9th Cir. 1977) ........................................................................................ 3, 6

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*,
  736 F.3d 1239 (9th Cir. 2013) .......................................................................................... 8

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*,
  762 F.3d 867 (9th Cir. 2014) ............................................................................................ 6

*Lake v. Lake*,
  817 F.2d 1416 (9th Cir. 1987) .......................................................................................... 9

*Network Automation, Inc. v. Advanced Sys. Concepts*,
  638 F.3d 1137 (9th Cir. 2011) .......................................................................................... 3

*Nexon Am., Inc. v. Kumar*,
  No. 11-6991, 2012 U.S. Dist. Lexis 47294 (C.D. Cal. Apr. 3, 2012) .................................. 2

*Panavision Int'l, L.P. v. Toeppen*,
  141 F.3d 1316 (9th Cir. 1998) ........................................................................................ 10

*PepsiCo v. Triunfo-Mex, Inc.*,
  189 F.R.D. 431 (C.D. Cal. 1999) .................................................................................. 2, 8

*Philip Morris USA, Inc. v. Castworld Prods.*,
  *Inc.*, 219 F.R.D. 494 (C.D. Cal. 2003) ...................................................................... 3, 8, 12

*Picot v. Weston*,
  780 F.3d 1206 (9th Cir. 2015) ........................................................................................ 11

*Rio Props. v. Rio Int'l Interlink*,
  284 F.3d 1007 (9th Cir. 2002) ........................................................................................ 14

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ............................................................................................ 9

*Sennheiser Electronic Corp v. Eichler*,
  No. 12-10809, 2013 U.S. Dist. Lexis 105319 (C.D. Cal. 2013) .......................................... 8

*Surfvivor Media, Inc. v. Survivor Prods.*,
  406 F.3d 625 (9th Cir. 2005) ............................................................................................ 8

*Symantec Corp. v. Global Impact, Inc.*,
  559 F.3d 922 (9th Cir. 2009) ............................................................................................ 2

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

OC\1996381.3

iii

Case No. 3:15-cv-01415-SI
APPLICATION FOR DEFAULT JUDGMENT

*Taylor Made Golf Co. v. Carsten Sports,*
    175 F.R.D. 658 (S.D. Cal. 1997) ........................................................................ 15

*TeleVideo Sys., Inc. v. Heidenthal,*
    826 F.2d 915 (9th Cir. 1987) ............................................................................... 2

*Truong Giang Corp. v. Twinstar Tea Corp.,*
    No. 06-3594, 2007 U.S. Dist. Lexis 100237 (N.D. Cal. Mar. 22, 2007) ................ 3

*Win Transp., Inc. v. Cal. Freedom Trans LLC,*
    No. 14-04178, 2015 U.S. Dist. Lexis 55023 (N.D. Cal. Feb. 24, 2015)................... 3

**STATUTES**

15 U.S.C. § 1114(1) ....................................................................................................... 3

15 U.S.C. § 1115(a) ....................................................................................................... 4

15 U.S.C. § 1115(b) ....................................................................................................... 4

15 U.S.C. § 1116(a) ..................................................................................................... 12

15 U.S.C. § 1117(a) ..................................................................................................... 14

15 U.S.C. § 1125(a) ....................................................................................................... 3

**RULES**

Fed. R. Civ. P. 4(f)(2)(A) .............................................................................................. 1

Fed. R. Civ. P. 4(h) ....................................................................................................... 1

Fed. R. Civ. P. 8(b)(6) ................................................................................................... 2

Fed. R. Civ. P. 12(a) ..................................................................................................... 1

Fed. R. Civ. P. 54(c) ................................................................................................... 12

Fed. R. Civ. P. 54(d)(1) .............................................................................................. 14

Fed. R. Civ. P. 55(a)-(b) ............................................................................................... 2

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

OC\1996381.3

iv

Case No. 3:15-cv-01415-SI
APPLICATION FOR DEFAULT JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

By this Application and based on the allegations of its well-pleaded Complaint, EMI respectfully requests judgment against Defendants that, *inter alia*, (1) prohibits their continued use of the infringing ENTREPRENEUR SPIRIT mark or any confusingly similar mark; (2) transfers the *entrepreneurspirit.org* domain name to EMI; and (3) awards EMI its costs and reasonable attorneys' fees.  EMI is entitled to such relief because Defendants have failed to respond to this litigation or file a responsive pleading as required by Fed. R. Civ. P. 12(a), the Clerk of the Court entered default against Defendants on June 18, 2015, and EMI's claims are meritorious.

### II.    STATEMENT OF FACTS

A.    EMI has numerous longstanding federal registrations for the ENTREPRENEUR[®] mark and various trademarks that include the ENTREPRENEUR[®] term, including its incontestable registrations for the ENTREPRENEUR[®] mark.  Docket No. 1 ("Compl.") at ¶ 28.

B.    Defendants, under the confusingly similar ENTREPRENEUR SPIRIT mark, offer identical and highly similar goods and services, including a magazine, to the same class of consumers served by EMI, namely small and medium-sized business owners.  *Id.* at ¶¶ 28, 36.

C.    EMI has contacted Defendants several times to express its concerns about Defendants' use of the ENTREPRENEUR SPIRIT mark, but Defendants have refused to cease use of the infringing mark.  *Id.* at ¶ 41.

D.    Accordingly, EMI filed its Complaint on March 27, 2015 for trademark infringement, false designation of origin, and unfair competition.  *See* Compl.

E.    EMI personally served Defendants on April 14, 2015 pursuant to Fed. R. Civ. P. 4(h) and 4(f)(2)(A) and in accordance with Trinidad and Tobago's laws for service.  Docket Nos. 10 and 11; Justman Dec. ¶ 5.

F.    In violation Fed. R. Civ. P. 12(a), Defendants failed to file a responsive pleading by the May 5, 2015 response deadline, and Defendants have failed to file any responsive pleading to date.  Justman Dec. ¶ 6.

1    G.    EMI accordingly secured the entry of default against Defendants on June 18,

2    2015.  Docket No. 19.  Justman Dec. ¶ 7.

3    **III.    ARGUMENT**

4        The Court should enter a default judgment barring Defendants from using the

5    ENTREPRENEUR® mark, the ENTREPRENEUR SPIRIT mark, or any confusingly similar

6    mark to prevent potential confusion among consumers, vindicate EMI's federal trademark rights,

7    and halt Defendants' ongoing infringement of these rights, which will otherwise continue

8    unabated.  Federal Rule of Civil Procedure 55 establishes a "two-step process" for entering a

9    default judgment consisting of:  (1) entry of default, and (2) entry of default judgment.  *See* Fed.

10   R. Civ. P. 55(a)-(b); *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986) (noting "the two-step

11   process required by Rule 55"); *Symantec Corp. v. Global Impact, Inc.*, 559 F.3d 922, 923 (9th

12   Cir. 2009) (same).  "Upon default, the defendant's liability generally is conclusively established,

13   and the well-pleaded factual allegations in the complaint—except those pertaining to damages—

14   are accepted as true."  *Nexon Am., Inc. v. Kumar,* No. 11-6991, 2012 U.S. Dist. Lexis 47294, at

15   *6 (C.D. Cal. Apr. 3, 2012).  *See also TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18

16   (9th Cir. 1987) (same); Fed. R. Civ. P. 8(b)(6) ("An allegation — other than one relating to the

17   amount of damages — is admitted if a responsive pleading is required and the allegation is not

18   denied.").  Here, step one of the process is complete as the Clerk has entered Defendants' default

19   and EMI is therefore entitled to the entry of default judgment because the well-pleaded factual

20   allegations in the Complaint establish Defendants' liability as fully discussed below.

21       **A.    EMI is Entitled to Default Judgment**

22       While the decision to grant or deny an application for default judgment is within the

23   Court's discretion, "[i]n applying th[e] discretionary standard, default judgments are more often

24   granted than denied."  *PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999).

25   Courts are guided by the following factors when determining whether to grant default judgment:

26   (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim and

27   the sufficiency of the complaint, (3) the sum of money at stake in the action, (4) the possibility of

28   a dispute concerning material facts and whether the default was due to excusable neglect, and

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
ORANGE COUNTY

OC\1996381.3

2

Case No. 3:15-cv-01415-SI
APPLICATION FOR DEFAULT JUDGMENT

(5) the likelihood of obtaining a decisions on the merits, which is favored.  *Eitel*, 782 F.2d at 1471-72.  Here, the enumerated factors weigh heavily in favor of granting default judgment and awarding the requested relief.

### 1.      EMI Will Suffer Prejudice Absent Default Judgment

EMI will be prejudiced without the entry of a default judgment because it will have no other recourse to stop Defendants' infringing activities and the resulting harm to the EMI Marks[1] and goodwill associated with these marks.  *See, e.g., Win Transp., Inc. v. Cal. Freedom Trans LLC*, No. 14-04178, 2015 U.S. Dist. Lexis 55023, at *8 (N.D. Cal. Feb. 24, 2015) ("[p]rejudice exists where denying the requested default judgment would leave the plaintiff without a proper remedy."); *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("Plaintiff would suffer prejudice if the default judgment is not entered because Plaintiff would be without other recourse for recovery [and] . . . Plaintiff will likely suffer great prejudice through the loss of sales and diminution of goodwill if default is not entered.").

### 2.      EMI's Claims are Meritorious and Well-Founded

In evaluating the merits of the claims stated in the complaint, courts must accept plaintiff's allegations, except for those pertaining to damages, as true.  *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977).  To prevail on trademark infringement, unfair competition, and false designation of origin claims under 15 U.S.C. §§ 1114(1), 1125(a) and California's common law, EMI must prove that:  (1) EMI has legally protectable trademarks; and (2) Defendants' unauthorized use of those marks is "likely to cause consumer confusion." *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1144 (9th Cir. 2011); *Truong Giang Corp. v. Twinstar Tea Corp.*, No. 06-3594, 2007 U.S. Dist. Lexis 100237, at *10 (N.D. Cal. Mar. 22, 2007) ("[T]he federal claims [of trademark infringement and unfair competition under the Lanham Act], if met with adequate evidence, are also sufficient to establish defendant's liability under the state law claims for unfair competition and trademark infringement") (citing *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994)).  Here, EMI

---

[1] Defined terms bear the same meaning as designated in the Complaint unless otherwise stated.

1   has alleged legitimate causes of action against Defendants for trademark infringement, unfair

2   competition, and false designation of origin.

3                           a.        *EMI owns Protectable, Distinctive, and Famous Marks*

4              As a preliminary matter, EMI's federal registrations (as alleged in the Complaint)

5   constitute prima facie evidence of the validity of the EMI Marks, including the

6   ENTREPRENEUR® mark.  Compl. at ¶ 28; 15 U.S.C. § 1115(a).  Moreover, several of EMI's

7   registrations for the ENTREPRENEUR® mark have become incontestable, which constitutes

8   "conclusive evidence" of the validity of those registered marks, EMI's ownership of those

9   marks, and EMI's "exclusive right to use the registered mark[s] in commerce."  Compl. at ¶ 28;

10  15 U.S.C. § 1115(b).

11             Beyond its registrations, EMI has developed substantial common law rights in its

12  ENTREPRENEUR Marks, including the ENTREPRENEUR® mark, by garnering tremendous

13  amounts of public recognition and acclaim for its products and services, establishing an

14  outstanding reputation within the business field, and accumulating an extremely loyal customer

15  base.  Compl. at ¶¶ 23-25, 30.  As a result, the ENTREPRENEUR® mark has acquired extensive

16  goodwill, developed a high degree of distinctiveness, and become famous, well known, and

17  recognized as identifying goods and services that originate from EMI.  *Id.* at ¶¶ 23-25, 30-31.

18             More specifically, EMI and its predecessor companies have used the ENTREPRENEUR®

19  mark for over thirty years to publish magazines and books that provide editorial content and

20  other information, and offer products and services related or of interest to businesses, business

21  owners, and prospective business owners.  *Id.* at ¶ 11-12.  Indeed, the *ENTREPRENEUR*®

22  magazine has a current paid circulation, including both subscriptions and newsstand sales, of

23  more than 650,000 in the United States, is sold and distributed in over 100 foreign countries, and

24  regularly features articles with the biggest names in the entrepreneurial industry.  *Id.* at ¶¶ 13-14.

25  EMI has also published over 200 books (and multiple e-books) under the ENTREPRENEUR®

26  and ENTREPRENEUR PRESS marks, and it has conducted numerous seminars, workshops, and

27  other educational events, many of which are sponsored by household names, such as American

28  Express, State Farm Insurance, and Verizon.  *Id.* at ¶¶ 16-18.

1      EMI also owns and operates several websites, such as *entrepreneur.com*, to promote its

2 goods and services.  The *entrepreneur.com* website has averaged over 20 million unique visitors

3 and over 85 million page views per month, and is ranked, respectively, as the 542 and 668 most

4 visited website in the United States and world by Alexa.  *Id.* at ¶¶ 19-20.  Further, EMI's fame

5 and high-quality content and services have resulted in numerous co-branding business

6 relationships with the top names in news and business, such as The UPS Store, MSNBC, and

7 Princeton Review.  *Id.* at ¶ 22.  Therefore, EMI not only owns valid marks, but the

8 ENTREPRENEUR® mark has acquired extensive goodwill, developed a high degree of

9 distinctiveness, and become famous, well known, and recognized as identifying goods and

10 services that originate from EMI.  *Id.* at ¶¶ 23-25, 30-31.

11      Moreover, numerous courts have already recognized the validity and strength of the EMI

12 Marks, including the ENTREPRENEUR® mark.  *Id.* at ¶¶ 32-35.  The U.S. District Court for the

13 Central District of California held that:  (1) "[t]he extensive advertising and public recognition

14 over the past 25 years have established [the ENTREPRENEUR® mark] as a strong mark in the

15 industry;" (2) the ENTREPRENEUR® mark "is a strong distinctive mark, deserving of

16 significant protection;" and (3) the ENTREPRENEUR® mark "has acquired secondary

17 meaning."  *Entrepreneur Media, Inc. v. Smith*, No. 98-3607, 2004 U.S. Dist. Lexis 24078, at *9-

18 10, 13 (C.D. Cal. June 23, 2004).  The Ninth Circuit reviewed the District Court's findings and

19 affirmed them on appeal.  *Entrepreneur Media, Inc. v. Smith*, 101 Fed. Appx. 212 (9th Cir.

20 2004).

21      Further, both a Magistrate Judge and District Court judge in the Eastern District of

22 Virginia found the ENTREPRENEUR® mark to be distinctive, and the U.S. District Court for the

23 District of Maryland recognized the EMI Marks as valid, strong, and distinctive.  *Entrepreneur*

24 *Media, Inc. v. seattleentrepreneur.com*, No. 11-00409, 2011 U.S. Dist. Lexis 139817, at *3-5

25 (E.D. Va. Dec. 6, 2011); *Entrepreneur Media, Inc. v. JMD Entertainment Group, LLC, et al*, 958

26 F. Supp. 2d 588, 594-596 (D. Md. 2013).

27               **b.**    **Defendants' unauthorized use of the ENTREPRENEUR**

28                     **SPIRIT mark creates a likelihood of consumer confusion**

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

OC\1996381.3

5

Case No. 3:15-cv-01415-SI
APPLICATION FOR DEFAULT JUDGMENT

1    Defendants have used a confusingly similar mark, ENTREPRENEUR SPIRIT, in

2    commerce and without EMI's authorization in connection with identical and highly similar

3    goods and services, which has or will likely result in consumer confusion.  Compl. at ¶¶ 36-39,

4    42, 48, 63, 74.  Defendants have admitted these facts are true by not denying them in a

5    responsive pleading.  *Geddes*, 559 F.2d at 560.

6        Further, Defendants' ENTREPRENEUR SPIRIT mark is likely to cause consumer

7    confusion with the EMI marks for several reasons.  In analyzing whether there is a likelihood of

8    consumer confusion, courts consider the well-known, non-exclusive *Sleekcraft* factors:

9    (1) strength of the mark; (2) similarity of the marks; (3) proximity of the goods; (4) marketing

10   channels used; (5) type of goods and degree of care likely to be exercised by the purchaser;

11   (6) defendant's intent in selecting the mark; (7) evidence of actual confusion; and (8) likelihood

12   of expansion of the product lines.  *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 353 (9th Cir.

13   1979); *see also Network Automation*, 638 F.3d at 1145 (these factors "are intended as an

14   adaptable proxy for consumer confusion, not a rote checklist.").  A weighing of the relevant

15   factors reveals a high likelihood of confusion.

16       **First**, the EMI Marks, as discussed above, are strong and distinctive marks.

17       **Second**, the ENTREPRENEUR® and ENTREPRENEUR SPIRIT marks are essentially

18   identical as the descriptive and non-source identifying "spirit" term does not distinguish the

19   marks, which otherwise both share the leading and dominant "ENTREPRENEUR" term.  *See La*

20   *Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 876 (9th Cir. 2014) (finding that

21   the similarity of the marks factor weighed in favor of plaintiff because both marks shared the

22   dominant word Quinta.  The court noted "dominant words frequently appear without anything

23   more in the marketplace. Where both marks are attached to such closely related services and the

24   senior user has a strong mark, the similarity of the words is sufficient for [the similarity of the

25   marks] factor to weigh in favor of [the plaintiff]."); *E. & J. Gallo Winery v. Gallo Cattle Co.*,

26   967 F.2d 1280, 1292 (9th Cir. 1992) (relying on the dominant "GALLO" element when finding a

27   likelihood of confusion).  Indeed, the marks, as used in the market, are largely indistinguishable,

28   especially as Defendants emphasize the ENTREPRENEUR portion of their mark:

Compl. at ¶¶ 14, 36-37.

**Third**, EMI and Defendants offer identical goods, namely magazines, and closely related goods and services under these essentially identical marks to the same class of consumers (small and medium-sized business owners). *Id.* at ¶ 36-39.

**Fourth**, EMI and Defendants offer these goods through the same or similar marketing channels, such as the iTunes store. *Id.* As shown by the following picture that Defendants posted to their Facebook page, this greatly increases the potential for confusion as both parties' apps may appear directly next to each other on a user's phone:



LATHAM&WATKINS^LLP   OC\1996381.3
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 3:15-cv-01415-SI
APPLICATION FOR DEFAULT JUDGMENT

1   *Id.* at ¶ 38.

2   Therefore, the Court should find Defendants liable for trademark infringement, unfair

3   competition, and false designation of origin in violation of the Lanham Act and California

4   common law.[2]

5   ### 3.   The Damage to the EMI Marks and EMI's Goodwill is Irreparable

6   "[T]he court must consider the amount of money at stake in relation to the seriousness of

7   Defendant's conduct."  *Pepsico*, 238 F. Supp. 2d at 1176.  Here, Defendants have continued to

8   engage in willful and intentional infringement of the EMI Marks despite EMI's best efforts to

9   halt this infringement.  Compl. at ¶¶ 41-44.  Defendants' infringement has caused, and will likely

10  to continue to cause, irreparable harm to EMI.  *See id.*; *Herb Reed Enters., LLC v. Fla. Entm't*

11  *Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) ("Evidence of loss of control over business

12  reputation and damage to goodwill could constitute irreparable harm."); *Sennheiser Electronic*

13  *Corp v. Eichler*, No. 12-10809, 2013 U.S. Dist. Lexis 105319, at *10 (C.D. Cal. 2013)

14  (explaining that continued trademark infringement that otherwise damages "goodwill and

15  business reputation [] will often constitute irreparable injury").  The gravity of Defendants'

16  misconduct and the resulting harm to EMI therefore justify entry of a default judgment.

17  ### 4.   No Potential Dispute of Material Facts and No Excusable Neglect

18  As Defendants have failed to answer the Complaint, thereby defaulting, there is no

19  dispute about the material facts of this case because all allegations of the Complaint, except for

20  those pertaining to damages, are taken as true once the Clerk enters default.  See, e.g., Philip

21  Morris, 219 F.R.D. at 500 ("Here, Plaintiff filed a well-pleaded complaint alleging the facts

22

23  [2] The remaining factors are either unimportant at this early stage in litigation or cannot be
    evaluated due to Defendants' failure to participate in this litigation.  *See Surfvivor Media, Inc. v.*

24  *Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005) (the *Sleekcraft* test is "a fluid one and the
    plaintiff need not satisfy every factor, provided that strong showings are made with respect to

25  some of them."); *Truong*, 2007 U.S. Dist. Lexis 100237, at *26 (granting default judgment where
    all but the last three *Sleekcraft* factors weigh in favor of a likelihood of confusion.); *Discovery*

26  *Commc'ns, Inc. v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282, 1291-92 (C.D. Cal. 2001)
    (granting default judgment for trademark infringement without analyzing all of the *Sleekcraft*

27  factors and noting that "because of the difficulty [of] garnering such evidence, the failure to

28  prove instances of actual confusion is not dispositive.")

1  necessary to establish its claims, and the court clerk entered default against the Defendant.  Thus,

2  no dispute has been raised regarding the material averments of the complaint").  Further, there is

3  no evidence of excusable neglect in the record, including because EMI properly served

4  Defendants with all necessary court documents, and Defendants have still failed to appear in this

5  action.  See Docket Nos. 10 and 11; Justman Dec. ¶¶ 5-6.

6          5.    Likelihood of a Decision on the Merits

7        Finally, while cases should be decided on the merits whenever possible, Defendants'

8  failure to defend this action has made a decision on the merits impractical if not impossible.

9  *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005).  Thus, "termination

10  of a case before hearing the merits is allowed when[] a defendant fails to defend an action."  *Id.*

11      **B.**    **This Court has Jurisdiction to Enter Default Judgment against Defendants**

12        Defendants have sufficient minimum contacts with the Northern District of California

13  arising out of and related to their offering, marketing, and promoting of goods and services under

14  the ENTREPRENEUR SPIRIT mark to California consumers through several California-based

15  Internet services, all to the detriment of a California company.  Compl. at ¶¶ 6-10, 36-38.  Courts

16  apply a three-prong test when analyzing specific jurisdiction: "(1) The non-resident defendant

17  must purposefully direct his activities or consummate some transaction with the forum or

18  resident thereof; or perform some act by which he purposefully avails himself of the privilege of

19  conducting activities in the forum, thereby invoking the benefits and protections of its laws;

20  (2) the claim must be one which arises out of or relates to the defendant's forum-related

21  activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice,

22  i.e. it must be reasonable."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th

23  Cir. 2004) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

24        ***First***, Defendants have purposefully directed their activities at California and availed

25  themselves of the privileges of conducting business in California.  Compl. at ¶¶ 6-10, 36-38.

26  In particular, Defendants offer, market, and promote their goods and services under the

27  ENTREPRENEUR SPIRIT mark through (a) the iTunes store, owned by the California-based

28  Apple, Inc.; (b) a Facebook page (*facebook.com/ESCMag*), which is provided by the California-

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

OC\1996381.3

9

Case No. 3:15-cv-01415-SI
APPLICATION FOR DEFAULT JUDGMENT

1   based Facebook, Inc.; and (c) a Twitter page (*twitter.com/ESC_Magazine*), which is provided by

2   the California-based Twitter, Inc.  *Id* at ¶ 37.  Further, Defendants owned and operated an

3   interactive website that allowed users to download the infringing ENTREPRENEUR SPIRIT

4   magazine and subscribe to the ENTREPRENEUR SPIRIT newsletter, and it was used to solicit

5   advertisers for the *entrepreneurspirit.org* website.  Justman Dec. ¶ 8.  Defendants also heavily

6   promoted their goods and services through the Apple App Store, including trumpeting their

7   accomplishments via Facebook:

18   Justman Dec. ¶ 9.  Therefore, Defendants have purposefully interacted with various California

19   businesses and consumers and availed themselves of the privileges of conducting business in

20   California.  *See Facebook, Inc. v. Banana Ads LLC*, No. 11-03619, 2013 U.S. Dist. Lexis 65834,

21   at *4 (N.D. Cal. Apr. 30, 2013) ("In sum, the Default Defendants made money by confusing

22   Facebook users, including users in California, and capitalizing on this confusion—some of which

23   was based on defendants' misuse of Facebook's marks, typesetting, and color scheme. This

24   constitutes aiming their conduct at Facebook and this forum."); *see also Panavision Int'l, L.P. v.*

25   *Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) ("operation of an interactive, commercial website

26   is often sufficient" to establish personal jurisdiction).

27        ***Second***, EMI's causes of action directly arise from Defendants' activities in the State of

28   California, namely the offering, marketing, and promoting of goods and services under the

1   unauthorized and confusingly similar ENTREPRENEUR SPIRIT mark through California-based

2   services to, *inter alia*, California residents, all of which directly harmed EMI, a California-based

3   company.  *See* Compl. at ¶¶ 6-10, 36-38.  Indeed, Defendants were aware of EMI, the

4   ENTREPRENEUR magazine, and EMI's *entrepreneur.com* website, but refused to cease their

5   infringing and harmful activity.  Justman Dec. ¶¶ 3-4; *see Facebook*, 2013 U.S. Dist. Lexis, at

6   *13 (finding that the "arising from" element is established where plaintiff is a California

7   company and injury would not have occurred but for defendants conduct); *Exobox Techs. Corp.

8   v. Tsambis*, No. 14-00501, 2015 U.S. Dist. Lexis 2157, at *10 (D. Nev. Jan. 6, 2015) (finding a

9   party expressly aimed his wrongful conduct at California when it knew the victim of such

10  conduct was a California resident); *craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039,

11  1053 (N.D. Cal. 2010) ("Because Plaintiff is headquartered in California and maintains its

12  website in California, Defendants' actions directly targeted California, and Defendants knew that

13  Plaintiff would suffer the brunt of its harm in California.").

14      ***Third***, Defendants have not overcome their burden to set forth a "compelling case" that

15  the exercise of jurisdiction would be unreasonable.  *See Picot v. Weston*, 780 F.3d 1206, 1212

16  (9th Cir. 2015) (noting if the plaintiff succeeds in satisfying the first two prongs "the burden

17  shifts to the defendant to 'set forth a "compelling case" that the exercise of jurisdiction would not

18  be reasonable.'") (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).  Rather,

19  the exercise of jurisdiction is reasonable here as Defendants could likely foresee litigation in

20  California given their substantial interactions with the State and businesses and consumers within

21  the State, and knowledge of EMI and the resulting harm to EMI.  Compl. at ¶¶ 6-10, 36-38;

22  Justman Dec. ¶¶ 3-6, 8-9; *CollegeSource, Inc. v. AcademyOne, Inc*., 653 F.3d 1066 (9th Cir.

23  2011) (finding the exercise of jurisdiction reasonable where out of state defendant purposefully

24  directed its actions at California.)

25      Therefore, the Court has specific jurisdiction over Defendants and may properly enter a

26  default judgment against them.

27  ///

28  ///

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
ORANGE COUNTY

OC\1996381.3

11

Case No. 3:15-cv-01415-SI
APPLICATION FOR DEFAULT JUDGMENT

1      ### C.      EMI is Entitled to Injunctive Relief

2          Section 34 of the Lanham Act empowers courts "to grant injunctions, according to the

3   principles of equity and upon such terms as the court may deem reasonable, to prevent the

4   violation of any right of the registrant of a mark registered in the Patent and Trademark Office or

5   to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title."  15 U.S.C.

6   § 1116(a).  Furthermore, "it is appropriate to grant an injunction on an application for default

7   judgment" if the requested relief is consistent with the demands of the Complaint.  *craigslist, Inc.*

8   *v. RealWorks*, No. 08-5072, 2009 U.S. Dist. Lexis 132432, at *8-9 (N.D. Cal. Oct. 29, 2009)

9   (citing *Elektra Entertainment Group Inc.* 226 F.R.D. at 393-94); *see also* Fed. R. Civ. P. 54(c)

10  ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the

11  pleadings.").  Permanent injunctive relief is appropriate when (1) the plaintiff risks suffering

12  irreparable harm; (2) monetary remedies are inadequate to compensate for the plaintiff's injury;

13  (3) the balance of hardships favors the plaintiff; and (4) the public interest would not be

14  disserved by an injunction.  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

15         The Court should grant permanent injunctive relief as requested in the Complaint because

16  all factors strongly favor EMI.  As a preliminary matter, EMI fully and adequately pleaded the

17  grounds for, and its entitlement to, a permanent injunction against Defendants in the Complaint.

18  The injunctive relief requested below is identical to the injunctive relief contained in the

19  Complaint's Prayer for Relief.  Compl. at P. 18-19.  As for the equitable factors:  (1) EMI will

20  lose control over the reputation of its trademark, suffering continuing irreparable harm if the

21  injunction is not granted; (2) injunctive relief is necessary to halt Defendants' continued

22  infringement of EMI's valuable trademark rights; (3) the injunction will only prevent Defendants

23  from engaging in unlawful behavior; (4) EMI will have no other recourse against Defendants if

24  an injunction is not granted; and (5) the injunction will protect EMI's valuable goodwill and the

25  public from confusion.  Compl. at ¶¶ 42-44; *see Allergan Inc. v. Mira Life Group, Inc.,* 72

26  U.S.P.Q.2d 1756, 1760 (C.D. Cal. 2004); *see also Philip Morris*, 219 F.R.D. at 502 ("Failure to

27  grant the injunction would needlessly expose the Plaintiff to the risk of continuing irreparable

28  harm").

1      Accordingly, EMI requests that the following permanent injunction be entered:

2      A)      Defendants, and their principals, officers, directors, members, partners, agents,

3 servants, employees, and attorneys, and all other persons acting in concert or participating with

4 them, who receive actual notice of the injunction order by personal or other service, shall

5 permanently:

6          1)      cease all use and never use the ENTREPRENEUR SPIRIT mark, the EMI

7 marks, or any other mark likely to cause confusion with the EMI marks, in

8 connection with the promotion, advertising, offering for sale, or sale, of

9 any products or services;

10        2)      never use any false designation of origin, false representation, or any false

11 or misleading description of fact, that can, or is likely to, lead the

12 consuming public or individual members thereof, to believe that any

13 products or services produced, offered, promoted, marketed, advertised,

14 provided, or sold by Defendants are in any manner associated or

15 connected with EMI, or are licensed, approved, or authorized in any way

16 by EMI;

17        3)      never represent, suggest in any fashion to any third party, or perform any

18 act that may give rise to the belief, that Defendants, or any of their goods

19 or services, are related to, authorized by, or sponsored by EMI;

20        4)      cease all use of the domain name *entrepreneurspirit.org* and any similar

21 domain names, and never register any domain names that contain any of

22 the EMI marks, or any domain names confusingly similar to any of the

23 EMI marks;

24        5)      cease all advertising of products or services under the ENTREPRENEUR

25 SPIRIT mark, including but not limited to Defendants' magazine,

26 Facebook page, Twitter account, and iTunes application;

27        6)      never unfairly compete with EMI in any manner whatsoever, or engage in

28 any unfair, fraudulent, or deceptive business practices that relate in any

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

OC\1996381.3

13

Case No. 3:15-cv-01415-SI
APPLICATION FOR DEFAULT JUDGMENT

1    way to the production, distribution, marketing, and/or sale of products and

2    services bearing any of the EMI marks; and

3       7)  never apply for or seek to register the ENTREPRENEUR SPIRIT mark or

4        any mark that is likely to cause confusion with any of the EMI marks.

5      B)  Defendants shall file with the Court and serve upon EMI's counsel, within thirty

6    (30) days after service of the order of injunction, a report in writing under oath setting forth in

7    detail the manner and form in which Defendants have complied with the injunction.  (*Id.* at 19.)

8      C)  Defendants, and their principals, officers, directors, members, partners, agents,

9    servants, employees, and attorneys, and all other persons acting in concert or participating with

10   them, shall transfer to EMI all domain names, including but not limited to

11   *entrepreneurspirit.org*, in Defendants' possession, custody, or control that include the word

12   "entrepreneur" or any misspelling thereof, or are otherwise confusingly similar to, or contain any

13   of, the EMI marks.  Compl. at P. 18-19.

14     **D.**  **EMI is Entitled to its Costs and Reasonable Attorneys' Fees**

15     EMI is entitled to its costs as the prevailing party.  15 U.S.C. § 1117(a); Fed. R. Civ. P.

16   54(d)(1) ("[u]nless a federal statute, these rules, or a court order provides otherwise, costs . . .

17   should be allowed to the prevailing party." ).

18     Further, EMI is entitled to recover its reasonable attorneys' fees because (1) the

19   Complaint, which is accepted as true, alleged that this was an exceptional case due to

20   Defendants' intentional and willful misconduct; and (2) Defendants failed to appear and have

21   disregarded this litigation.  Compl. at ¶¶ 42-43, 56, 69; 15 U.S.C. § 1117(a) ("The court in

22   exceptional cases may award reasonable attorney fees to the prevailing party."); *see, e.g., Rio*

23   *Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002) (upholding an award of

24   attorney's fees solely because, "by entry of default judgment, the district court determined, as

25   alleged in [plaintiff's] complaint, that [defendants] acts were committed knowingly, maliciously,

26   and oppressively, and with an intent to . . . injure [plaintiffs].") (internal quotation marks

27   omitted); *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (same);

28   *Cyclone USA, Inc. v. LL&C Dealer Servs., LLC*, No. 07-5040, 2010 U.S. Dist. Lexis 51193, at

LATHAM&WATKINS^{LLP}
ATTORNEYS AT LAW
ORANGE COUNTY

OC\1996381.3

14

Case No. 3:15-cv-01415-SI
APPLICATION FOR DEFAULT JUDGMENT

1   *10 (C.D. Cal. May 24, 2010). (awarding attorney fees for willful and deliberate trademark

2   infringement); *Discovery Commc'ns*, 172 F. Supp. 2d at 1291-1292 ("a case may be considered

3   exceptional where the defendants disregard the proceedings and do not appear."); *Taylor Made*

4   *Golf Co. v. Carsten Sports*, 175 F.R.D. 658, 663 (S.D. Cal. 1997) (finding "because the

5   defendant has failed to appear, plaintiff may request an award of reasonable attorney fees.").

6           If the Court determines that an award of costs and/or reasonable attorneys' fees is

7   appropriate in this case, EMI will submit a motion in compliance with Local Rule 54.

8   **IV.    CONCLUSION**

9           For the foregoing reasons, EMI respectfully requests that the Court enter default

10  judgment against Defendants in the form of the attached Proposed Order and award EMI its costs

11  and reasonable attorneys' fees.

12  Dated:  August 14, 2015                          Respectfully submitted,

13                                                   LATHAM & WATKINS LLP

14

15                                              By /s/ Patrick C. Justman
                                                   Perry J. Viscounty
16                                                 Jennifer L. Barry
                                                   Patrick C. Justman
17
                                                   Attorneys for Plaintiff
18                                                 ENTREPRENEUR MEDIA, INC.

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

OC\1996381.3

15

Case No. 3:15-cv-01415-SI
APPLICATION FOR DEFAULT JUDGMENT

1

## **CERTIFICATE OF SERVICE**

2      On August 14, 2015, I caused the attached **APPLICATION FOR DEFAULT**

3  **JUDGMENT AGAINST KIRTON COMMUNICATIONS GROUP LIMITED AND MAS**

4  **FINANCIAL & CORPORATE SERVICES LTD** to be emailed to the following:

5
Mr. Paul Pereira
Fitzwilliam, Stone, Furness-Smith & Morgan
6                           48-50 Sackville Street
Port of Spain
7                          Trinidad and Tobago
Email:  ppereira@fitzwilliamstone.com
8

9  to arrange for personal service via messenger upon the following:

| Kirton Communications Group Limited | MAS Financial & Corporate Services Ltd. |
|---|---|
| LP55 Moraldo Trace | 63 Aberdeen Park |
| Sam Boucaud Road | Edinburgh Gardens |
| Santa Cruz | Chaguanas |
| Trinidad and Tobago | Trinidad and Tobago |

10

11

12

13

14      I declare under penalty of perjury under the laws of the United States of America

15  that the foregoing is true and correct.

16      Executed on August 14, 2015, at San Diego, California.

17

/s/Patrick C. Justman
18                                        Patrick C. Justman

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

OC\1996381.3

16

Case No. 3:15-cv-01415-SI
APPLICATION FOR DEFAULT JUDGMENT